**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

51-53 WEST 129th STREET HDFC, INC.

Case No. 12-10502 (MG)

Debtor.

**MEMORANDUM OPINION GRANTING THE CITY OF NEW YORK'S**
**MOTION TO VACATE THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)**

*A P P E A R A N C E S*:

MICHAEL A. CARDOZO
*Corporation Counsel of the City of New York*
100 Church Street, Room 5-233
New York, New York 10007
By:    Hugh H. Shull III, Esq.

ARLENE GORDON-OLIVER, P.C.
*Counsel for the Debtor*
50 Main Street, Suite 1000
White Plains, New York 10606
By:    Arlene Gordon-Oliver, Esq.

TRACY HOPE DAVIS
*United States Trustee*
33 Whitehall Street, 21st Floor
New York, New York 10004
By:    Nazar Khodorovsky, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The City of New York (the "City") moved to dismiss this case pursuant to section 1112 of the Bankruptcy Code, or alternatively, to vacate the automatic stay pursuant to section 362(d) (the "Motion").[1]  (ECF Doc. # 30.)  51-53 West 129th Street Housing Development Fund Corporation, Inc. (the "Debtor") opposed the Motion and filed the affidavit of board president Ismail Shamsid-Deen in support of its opposition (the "Objection").  (ECF Doc. # 34.)  For the reasons discussed below, the Court granted the City's Motion to lift the stay but declined to dismiss the case until the Property has been transferred.[2]

The Debtor in this case is a Housing Development Finance Corporation ("HDFC"), established pursuant to applicable New York law and created in 1984 for the purpose of providing low-income housing at the property located at 51-53 West 129th Street, New York, New York (the "Property").  In 1985, the Debtor purchased the Property from the City for $6,000.  Nevertheless, the Debtor has been seriously behind in paying its real property taxes and water and sewer charges, reportedly owing over $800,000 as of April 27, 2012.  Despite the Debtor's failure to pay its water and sewer bills, the City has provided those services to the

---

[1]    While not jointly administered, the Debtor has throughout its foreclosure and bankruptcy proceedings acted in conjunction with the debtor in another HDFC case, *In re 31-33 West 129th Street HDFC, Inc.* (No. 12-10504). The City similarly moved to dismiss or to vacate the stay in that case, for the same reasons argued in this case. The same counsel represents the parties in both cases; the same individual, Ismail Shamsid-Deen, is the president of both debtors; and the City's motions in both cases were heard together.  The reasoning and ruling set forth herein applies in both cases; a separate order has been entered in Case No. 12-10504.

[2]    At the hearing on the Motion on June 19, 2012, the Court ruled from the bench, granting the Motion as provided herein, directing that an order be prepared granting relief and indicating that an opinion would later issue explaining in more detail the basis for the Court's ruling, particularly because of the number of similar cases filed in this Court.  The Order Granting Stay Relief in this case was entered on July 11, 2012.  (ECF Doc. # 35.)  A similar Order Granting Stay Relief was entered in Case No. 12-10504 on July 11, 2012.  (Case No. 12-10504, ECF Doc. # 35.)  If the motion to dismiss were granted, the motion to lift the automatic stay would be moot.  The Debtor could theoretically file a new bankruptcy petition if this one is dismissed—again possibly staying the City's transfer of the Property.  For that reason, the Court denied the motion to dismiss without prejudice until the Property is transferred. At that point, either the Debtor or the City may renew the motion to dismiss.

tenants, assuring that the tenants had water and sanitation services. Like other financially stressed HDFCs, the Debtor here tried to solve its financial problems by selling the Property. As explained further below, state law designed to preserve low-income housing significantly limits the ability of an HDFC to sell or transfer its property. The Debtor's attempts to sell the Property were blocked by the City, and the Debtor's state court litigation efforts to overturn that result have been unsuccessful.[3]

In early 2011, the City obtained a judgment of foreclosure on the Debtor's Property using the statutory *in rem* foreclosure procedure applicable in the circumstances. Before the City could transfer the Property to a new not-for-profit corporation, the Debtor filed its chapter 11 bankruptcy petition (the "Petition"). (ECF Doc. # 1.) At this juncture, vacating the stay is appropriate because it will allow the City to transfer the Property to another not-for-profit corporation that will oversee any necessary rehabilitation of the Property, assure that the Property remains part of the City's low-income housing supply, and permit the current tenants to remain in their apartments.

## I.  BACKGROUND

### A.  HDFCs Are Designed to Protect the City's Low-Income Housing Supply

The Debtor is an HDFC, a corporation organized and incorporated expressly to provide low-income housing pursuant to Article XI of the New York Private Housing Finance Law (the "PHFL"). Mot. ¶ 2. Article XI of the PHFL was enacted in response to New York's "seriously inadequate supply of safe and sanitary dwelling accommodations within the financial reach of families and persons of low income," a condition which "is contrary to the public interest and

---

[3]  Efforts by HDFCs to repay their debts by selling their property to for-profit developers are routinely blocked under applicable law; inflation in property values (even in today's depressed real estate market) makes many of these properties much more valuable if they can be freed from the restrictions applicable to low-income housing. Here, the Debtor attempted to sell the Property—for which it paid $6,000—for $1.5 million.

3

threatens the health, safety, welfare, comfort and security of the people of the state." N.Y. Priv. Hous. Fin. L. § 571 (McKinney 2002). An HDFC's certificate of incorporation must limit the HDFC's purpose to "develop[ment of] a housing project for persons of low income" and prevent income or earnings from "inur[ing] to the benefit or profit of any private individual, firm, corporation or association." *Id.* at § 573.3. The New York City Department of Housing Preservation and Development ("HPD"), tasked with overseeing HDFCs on behalf of the City, "protects the existing housing stock and expands housing options for New Yorkers as it strives to improve the availability, affordability, and quality of housing in New York City." New York City Department of Housing Preservation & Development, http://www.nyc.gov/html/hpd/html/about/about.shtml (last visited July 18, 2012).

Overseeing the maintenance and transfer of properties owned by HDFCs is an integral part of the City's efforts to preserve the existing affordable and low-income housing stock. If an HDFC cannot or does not properly maintain its property, or pay taxes, water charges, or other necessary expenses on its property, the City steps in to assure that basic tenant services are preserved. When the City forecloses on an HDFC-owned property, it transfers the property to another not-for-profit corporation. The City generally forgives arrears for taxes and water and sewer charges and, to the extent necessary, advances money to another HDFC to rehabilitate the building. Current tenants—at least those who are paying their rent—are able to keep their apartments and continue paying below-market rates while the building maintains its affordable housing status.

### B. Formation of the Debtor

The Debtor was incorporated as a not-for-profit HDFC in November 1984. Its certificate of incorporation specifies that it was "not formed for pecuniary profit or financial gain, but rather

. . . exclusively for the purposes of developing a housing project for persons of low income." Mot. Ex. A.  In 1985, the Debtor purchased the Property from the City for $6,000 pursuant to the requirements, provisions, and restrictions of the PHFL, as well as the New York Not-for-Profit Corporation Law (the "N-PCL").  *Id*.  The deed conveying the Property (the "Deed") restricted the Debtor from selling or otherwise alienating the Property without HPD approval for fifteen years.  This restriction expired on August 9, 2000, but the Deed also contained a provision stating that the Property was held subject to local rules, statutes, and regulations.  This provision had no expiration date and remained pertinent to the Debtor, requiring it to follow local laws restricting the transfer of property of HDFCs, regardless of the other Deed provisions.

### C. Article 78 Proceeding and *In Rem* Foreclosure Action

In or around January 2008, the Debtor petitioned the Attorney General in an attempt to sell the Property under the N-PCL.  When HPD advised the Attorney General that HPD approval for the sale was required, the Attorney General directed the Debtor to contact HPD.  The Debtor then commenced an Article 78 Proceeding in New York State Supreme Court (the "Supreme Court"), seeking to compel the Attorney General to act in the absence of HPD approval and to prohibit HPD from exercising jurisdiction over the proposed sale (the "Article 78 Proceeding"). The Supreme Court dismissed the Article 78 Proceeding, finding that the Attorney General had no duty to act upon a notice of filing and that HPD could not be prohibited from acting when it was not acting in a judicial or quasi-judicial capacity.  *See* Mot. ¶ 14.

Also in January 2008, when the Debtor was delinquent in taxes, it was included in the *In Rem Tax Foreclosure Action No. 49, Borough of Manhattan* (Sup. Ct. N.Y. Co. Index No. 580001/08) (Jaffe, J.) (the "Foreclosure Action") pursuant to section 11-401 *et. seq.* of the Administrative Code of the City of New York (the "Admin. Code").  *See* Mot. ¶ 19.  By

5

including the Property in the *in rem* action, the City intended to maintain the Property as low-income housing, address housing code violations, and end the Debtor's recurring tax delinquency. *Id.* at ¶ 18. The Debtor did not respond to the Foreclosure Action, nor did it attempt to redeem the Property by either paying its delinquent taxes or entering into an installment agreement with the City's Department of Finance pursuant to Admin. Code sections 11-405 and 11-409. *Id.* at ¶ 20.

### D. Foreclosure Judgment and the Redemption Period

On February 15, 2011, the Supreme Court granted the City a foreclosure judgment under Admin. Code sections 11-412 and 11-412.1. *In Rem Tax Foreclosure Action No. 49*, No. 580001/08. Typically, in a modified *in rem* foreclosure under section 11-412, the City does not take title to the property. Instead, the property is transferred to a third party as part of the City's Third Party Program.

Under the Third Party Program, and pursuant to Admin. Code section 11-412.1, there is a four-month period after the entry of a foreclosure judgment during which the property owner or an interested party can redeem the property from foreclosure by repaying all delinquent taxes, or by entering into an *in rem* installment agreement (the "Redemption Period" or "Mandatory Period"). *See* Admin. Code § 11-412.1. Once the Redemption Period expires, the property is no longer subject to the protections typically afforded by the automatic stay. *In re Sadie Haynes*, 283 B.R. 147, 154, 156 (Bankr. S.D.N.Y. 2002).[4] Filing for bankruptcy may extend the

---

[4] *Sadie Haynes*, 283 B.R. at 154, explains *in rem* foreclosure proceedings:

> Section 11-412.1 of the New York City Administrative Code authorizes the City of New York to foreclose by way of an *in rem* action against those properties that are delinquent in tax payments. Prior to the entry of a judgment in favor of the City, a court must determine that the City has met all of the requirements, including notice requirements, of the chapter. *See* Admin. Code § 11-412.1(a); Admin. Code § 11-406 (detailing the notice requirements). If a final judgment is entered in favor of the City, a Mandatory Period begins to run pursuant to § 11-412.1(d). The Mandatory Period lasts four (4) months

Redemption Period by sixty days, but only if the Redemption Period did not expire before the petition date. 11 U.S.C. § 108(b); *see also Sadie Haynes*, 283 B.R. at 156 ("The Mandatory Period prescribed under § 11-412.1(d) is the period during which an individual can exercise her right of redemption. If a petition is filed while the redemption right is unexpired, the equitable right of redemption becomes a part of the bankruptcy estate. However, if at the date of filing, the right of redemption has already expired, there is nothing there to be included in the bankruptcy estate and there is no right to be protected under the automatic stay." (citations omitted)). Here, the Debtor did not make any effort to redeem the Property during the Redemption Period, and did not file for bankruptcy until nearly eight months after the Redemption Period had expired.

After the expiration of the Redemption Period, there is a second four-month period during which the City can transfer the property to itself or a third party (the "Transfer Period"). *See* Admin. Code § 11-412.1(c). Typically, the property is transferred to a third party that is qualified to, *inter alia*, rehabilitate the distressed property and work with tenants to achieve this goal. *See id.* at § 11-412.1(b). The transferee then assumes interim ownership. Another City-approved organization becomes the eventual owner and is given title to the property after managing it and securing financing for rehabilitation to the extent necessary.

**E. The Debtor Proposed a Sale as an Alternative to Foreclosure**

In February 2011, the Debtor advised the Attorney General that it planned to sell the Property to a purchaser known as Tal Bar-Or, with whom it had entered into a contract in June 2010 for $1.5 million (the "Proposed Sale"). In May 2011, HPD made it known that it would not

---

during which "*any* person claiming to have an interest in such parcel shall have the right to make a payment to the commissioner of finance consisting of all taxes, assessments, and other legal charges owing on said parcel." Admin. Code § 11-412.1(d) (emphasis added). Within the four-month period, any such interested person may also request an installment agreement. *Id.* Following the expiration of the Mandatory Period without payment, the commissioner of finance may execute a deed conveying the foreclosed property to the City or a qualified third party. Admin. Code § 11-412.1(c).

grant approval, and thus the Attorney General also denied approval. The Redemption Period for the Debtor expired on June 23, 2011. Upon the expiration of the Redemption Period, during the Transfer Period, the City should have been able to transfer the Property, either to itself or to a third party. Instead, on June 27, 2011, the Debtor by order to show cause sought Supreme Court approval to sell the Property, and requested a temporary restraining order and a preliminary injunction prohibiting the City from transferring the Property pursuant to the Foreclosure Judgment. The Attorney General refused to endorse the Proposed Sale, in part because the Debtor did not receive HPD approval. *51-53 W. 129th St. HDFC v. Attorney Gen. of N.Y.*, No. 107352/11 (Sup. Ct. N.Y. Nov. 29, 2011).

The Supreme Court issued an opinion on November 29, 2011, supporting the Attorney General's position and denying the Debtor approval for the Proposed Sale and the injunction (it had previously denied the temporary restraining order), and holding that the sale did not meet the requirements of N-PCL 511(d). *Id.* The Property was scheduled to be transferred on November 30, 2011, but the transfer was stayed for ten days to allow the Debtor to appeal.

The Debtor appealed the Supreme Court's decision to the Appellate Division. On December 12, 2011, a justice of the Appellate Division issued a temporary stay on a foreclosure transfer of the Property, but on February 7, 2012, the Appellate Division denied the Debtor's motion for a stay pending appeal and vacated the temporary stay. On February 8, 2012, the day after the temporary stay was lifted, the Debtor filed its Petition (the "Petition Date"); the automatic stay prevented the City from transferring the Property.[5] Mot. ¶¶ 41-42. As of April

---

[5] The state court appeal continued after the bankruptcy petition was filed. The City delayed filing the Motion in this case until the Appellate Division ruled. On May 22, 2012, the Appellate Division, First Department unanimously affirmed the Supreme Court decision. *See 51-53 W. 129th St. HDFC v. Attorney Gen.*, 944 N.Y.S.2d 551, 552 (N.Y. App. Div. 2012). The Debtor did not appeal the Appellate Division decision. The Debtor asks this Court for an extension of time and permission to sell the Property to a third party, but applying the *Rooker-Feldman* doctrine and *res judicata*, this Court may not revisit the state law issue already conclusively determined by the state

8

27, 2012, the Debtor owed $641,894.70, including interest, in taxes and related charges dating back to 1996, including $6,611.90[6] in post-petition taxes, not including interest. Until April 2012 the Debtor had not made any tax payments. Additionally, as of the filing of the Motion, the Debtor owed $204,779.25 in water and sewer charges to the New York City Department of Environmental Protection and Water Board, which constitute liens on the Property. The Debtor's sole means of rehabilitating under chapter 11 is through a sale of the Property.

## II. DISCUSSION

### A. State Law Forbids the Debtor's Proposed Sale

The Debtor's Proposed Sale is inconsistent with applicable state law. The N-PCL required the Debtor to obtain the approval of the Supreme Court in order to sell and required the Debtor to give notice to the Attorney General, who was to review the sale application with deference to HPD approval to ensure it met N-PCL standards. N.Y. Not-For-Profit-Corp. L. §§ 510-11 (McKinney 2002). Further, section 511(a)(6) of the N-PCL requires that the terms of the Proposed Sale be "fair and reasonable to the corporation, and that the purposes of the corporation, or the interests of its members, will be promoted thereby." *Id.* at § 511(a)(6). In its decision, the Supreme Court held that this requirement was not met by the Proposed Sale. *51-53 West 129th Street HDFC*, No. 107352/11 at 5. The Supreme Court found that "it appears the sale is much more for the benefits of the for-profit purchaser/developer Tal Bar-Or and the outstanding corporate vendors of the petitioner rather than promoting the interests of the petitioner or its members." *Id.* Accordingly, the Supreme Court in its Order Denying the Proposed Sale held that "the sale of the building to an individual purchaser rather than a transfer

---

court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[6]   In its Objection, the Debtor submits that its post-petition real estate taxes and all post-petition charges have been paid. The latest operating statement from April (ECF Doc. # 33) shows only $170 in real estate taxes paid.

9

of the premises by the City to a qualified HDFC is in contravention with the purpose of the HDFC's creation . . . ." *Id.* The Appellate Division affirmed the Supreme Court's decision, adding that "as a threshold issue, petitioners have failed to show that the proposed sales of their properties are even possible." *51-53 West 129th Street HDFC*, 944 N.Y.S.2d at 552.[7] This Court cannot review these earlier state court determinations.

Additionally, a provision in the Deed restricts the Proposed Sale. Article 1 of the Deed specifies that the Debtor holds the Property "forever, subject to: (a) the provisions of all laws, codes, statutes, ordinances, acts, rules and regulations of any local, state or federal government, or any agency or subdivision thereof, having jurisdiction, or any violation of the same." *Id*. Art. 1(a). This provision of the Deed does not expire and requires the Debtor to hold the Property subject to the PHFL and N-PCL. Since the Supreme Court has made the determination that the Proposed Sale contravenes these laws, the Deed restrictions imposed by this Deed provision further prohibit the Proposed Sale.

In the Objection, Shamsid-Deen asserts that he was never advised about the statutory restrictions on sale of the Property. As a result, he avers, the Debtor borrowed money originally earmarked for community service purposes from related not-for-profit entities and from its management company, in anticipation of being able to sell the Property to a third party and repay

---

[7] In *In re 523 East Fifth Street Housing Preservation Development Fund Corp.*, 79 B.R. 568 (Bankr. S.D.N.Y. 1987), the debtor, also an HDFC, attempted to sell its property "free and clear of all liens, encumbrances and covenants and specifically a covenant in the deed by which the City conveyed the property to the Debtor, which covenant requires the property to be used solely for low income housing." The court found that under New York's Real Property Actions and Procedure Law ("RPAPL") section 1955 the covenant could not be extinguished because it was "created for a public purpose with a governmental unit, subdivision and agency of New York State." *Id*. at 572. Nor could the covenant be voided under RPAPL section 1951 because to do so would be to contravene the public purpose provision of RPAPL section 1955. *Id*. The court further found that this covenant ran with the land, and could not be voided under common law. *Id*. at 576. Thus, the Article 3 covenant in the Deed here, which similarly requires the Property to be used only for low-income housing, would hold even if the other provisions of the Deed did not apply.

10

the loans. *See* Objection ¶¶ 7, 13; Mot. ¶ 7. However, the fact that the Debtor borrowed money cannot alter the result in this case.[8]

### B. Cause for Stay Relief is Found Under 11 U.S.C. § 362(d)

The City's Motion must be granted because it has established cause to lift the stay in this case. Under section 362(d)(1) of the Bankruptcy Code, a court shall grant relief from the automatic stay "such as by terminating, annulling, modifying, or conditioning" the stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). Here, the City's tax liens are not adequately protected, as the Debtor lacks the ability to pay off the liens. While section 362(d)(1) explicitly identifies a lack of adequate protection as cause for stay relief, "there are other bases for a cause finding." 3 Collier on Bankruptcy ¶ 362.07[3] (16th ed. rev. 2011).

1. <u>The City is Entitled to Stay Relief Under Section 362(d)(1)</u>

In *In re Inwood Heights Housing Development Fund Corp.*, 2011 WL 3793324, *6-7 (Bankr. S.D.N.Y. Aug. 25, 2011), this Court addressed other bases for a cause finding under section 362(d)(1). The Court granted the City stay relief because the debtor could not reasonably rehabilitate in bankruptcy. *Id.* at *6-7. *Inwood Heights* involved a single-asset real estate ("SARE") debtor that was a low-income HDFC organized under New York State's not-for-profit corporation and public housing finance laws. The debtor in *Inwood Heights* purchased the property for $1, with an "Enforcement Note" held by HPD and secured by an "Enforcement Lien Mortgage" in the amount of $999,999, the estimated value of the property. *Id.* at *2. The City received a foreclosure judgment against the debtor prior to the bankruptcy filing, due to unpaid

---

[8] Indeed, the state court in denying approval of the sale in this case, rejected arguments based on the loans: "N-PCL § 517 provides that the members of a corporation shall not be personally liable for the debts, liabilities or obligations of the corporation, except under specific obligations, and none of these exceptions apply here." *51-53 West 129th Street HDFC,* No. 107352/11 at 5.

11

real estate taxes and unpaid water and sewer bills, which, combined with the mortgage, gave the City liens in excess of $1.5 million. *Id*. at *4. Due to a series of restrictions placed in the debtor's deed, certificate of incorporation and a regulatory agreement executed with the City, the Court found that "any legitimate bankruptcy goal would be frustrated by the enforceable restrictions." *Id.* at *7. These restrictions prevented the debtor from selling the property without approval of the City and its various agencies.[9] *Id.*

The controlling facts in *Inwood Heights* and in this case are analogous. As in *Inwood Heights*, the Debtor is a SARE debtor and an HDFC, the Property was purchased at below-market value to effectuate the City's affordable-housing goals, and the Debtor owes hundreds of thousands of dollars in long-unpaid real estate taxes, water and sewer bills. Further, the City here, as in *Inwood Heights*, obtained a foreclosure judgment against the Debtor well in advance of the bankruptcy filing, and the Redemption Period had expired before the Petition Date. In *Inwood Heights*, the Deed restrictions on alienating the Property were still effective, while here some restrictions expired on August 9, 2000. Nevertheless, the provision in the Deed in this case subjecting the Property to the City's laws and regulations (and the restrictions imposed under these laws and regulations) has not expired. Thus, as in *Inwood Heights*, prohibitions on alienation of the Property remain in place. The Redemption Period expired before the bankruptcy petition was filed. Therefore, the Debtor does not have an interest in the Property sufficient to warrant denial of the City's Motion.

---

[9]  *Inwood Heights* makes clear that a section 363 sale cannot shed state law restrictions on alienation of the property: "The Debtor cannot relieve itself of these restrictions simply by selling the Property under section 363(f). Section 363(f) enables a trustee or debtor in possession to sell property of the estate free and clear of all liens and interests if, among other things, '[a]pplicable nonbankruptcy law permits sale of such property free and clear of such interests.' 11 U.S.C. § 363(f)(1). … [T]he Debtor cannot use the Bankruptcy Code to obviate compliance with any sale restrictions . . . ." *Inwood Heights,* 2011 WL 3793324, *7. Section 363(d)(1), applicable to an HDFC, further makes clear that a corporation that "is not a moneyed business" may sell property under section 363(b) or (c) "only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation . . . ." 11 U.S.C. § 363(d)(1).

12

Additionally, in *Inwood Heights*, this Court found that, while "section 1112(b)(4)(A) explicitly states that cause exists for conversion or dismissal when there is a 'substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation', . . . this same standard evidences cause in the context of stay relief under section 362(d)(1)." *Id*. at *6 (citing 11 U.S.C. § 1112(b)(4)(A)).  Here, the City has adequately demonstrated in the Motion that cause exists for stay relief based on diminution of the estate and absence of a reasonable likelihood of rehabilitation under section 1112(b)(4)(A), which applies in this case under section 362(d)(1).  The Debtor has been unable to pay taxes and maintenance costs, and has defaulted under its 2008 installment agreement with the City.  *See* Mot. ¶ 64.  The Proposed Sale to a for-profit developer was the only solution the Debtor proposed to pay its debts.  The Debtor took no steps to redeem the property.  HPD will not approve the Proposed Sale, and the Supreme Court and Appellate Division have held that denying approval of the Proposed Sale was proper.  These factors ensure that there is essentially no chance of rehabilitation.

    2. Stay Relief is Also Warranted Under Sections 362(d)(2) and 362(d)(3)

Cause for stay relief is also found under section 362(d)(2) of the Bankruptcy Code, providing that the court shall grant relief from stay if "(A) the debtor does not have an equity in such property, and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Due to the expiration of the Redemption Period and its inability to sell or mortgage the Property without HPD's consent, the Debtor has lost its equity in the Property. Further, to show that the Property is "necessary for an effective reorganization," the Debtor must demonstrate not only that the Property is needed for any successful reorganization, but also "must prove that there is a reasonable possibility of a successful reorganization within a

13

reasonable time." *See In re Diplomat Elecs. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988) (citing *U.S. Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)).[10] The Debtor did not file a plan here, and so cannot satisfy this prong of section 362(d)(2).

Additionally, since the date the Motion was filed, the ninety-day extension period granted to SAREs under section 362(d)(3) has elapsed, without a plan having been filed and without the Debtor having commenced monthly payments. *See* 11 U.S.C. § 362(d)(3). As neither of the aforementioned conditions required under section 362(d)(3) for a further extension have been met, the City is also entitled to relief under section 362(d)(3).

## CONCLUSION

For the foregoing reasons, the City's Motion to lift the automatic stay was **GRANTED**. The Motion to dismiss was **DENIED WITHOUT PREJUDICE**.

Dated:   July 19, 2012
         New York, New York

                                          _____/s/Martin Glenn_____
                                              MARTIN GLENN
                                          United States Bankruptcy Judge

---

[10] *Diplomat Elecs.* held that the debtor had not satisfied the *Timbers* standard for section 362(d)(2)(B) because "where the debtor has not shown that it can obtain confirmation of a plan, it has not met its burden of showing that the property is necessary to an effective reorganization." *Id*. at 693 (citing *In re Woodridge North Apts., Ltd.*, 71 B.R. 189 (Bankr. N.D. Cal. 1987); 2 L. King, Collier on Bankruptcy ¶ 362.07 at 362-61 (15th ed. 1987)).